UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORTEZ CUNNINGHAM,

       Plaintiff,                       Civil Action No. 10-12514

       v.                            District Judge Stephen J. Murphy, III
                                    Magistrate Judge Laurie J. Michelson

SMITH-GLADNEY, et al.,

       Defendants.

_____/

REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Dkts. 18, 44)
AND ORDER TO DISMISS DEFENDANTS' MOTION
TO STAY DISCOVERY AS MOOT (Dkt. 45)

      Plaintiff Cortez Cunningham brought this prisoner civil rights case alleging that Defendants

Naomi Smith-Gladney, Christine E. Beasley, Susan Kristensen, Alfred Jones, and Richard Russell[1]

violated his rights by denying, or at least delaying, medical care for an ailment described in a

January 9, 2009 medical request ("kite"). (Dkt. 1, Pl.'s Compl. at 4.) On November 16, 2010,

Defendants Smith-Gladney, Beasley, and Kristensen filed a Motion for Summary Judgment. (Dkt.

18, Defs.' Mot. Summ. J.) On June 29, 2011, Defendant Jones filed a Motion for Summary

Judgment. (Dkt. 44, Def.'s Mot. Summ. J.) For the reasons set forth below, this Court

**RECOMMENDS** that the Defendants' Motions for Summary Judgment be **GRANTED**, and that

_____

      [1] Plaintiff identified John Doe as Richard Russell on June 8, 2011; therefore John Doe was terminated as a Defendant on June 9, 2011. (Dkt. 37, Not. of Pl. Fulfillment of Order; Dkt. 39, Order Directing Service of Complaint and Identifying John Doe.)

1

Plaintiff's Complaint be **DISMISSED WITH PREJUDICE** as to Defendants Smith-Gladney, Kristensen, Jones, and Beasley. The Court also **RECOMMENDS** that Plaintiff's claims against Defendant Russell be **DISMISSED** with **PREJUDICE** for failure to state a claim upon which relief may be granted. Lastly, the Court orders that Defendants' Motion to Stay Discovery be **DISMISSED** as **MOOT**. (Dkt. 45, Defs.' Mot. to Stay.)

## I. BACKGROUND

### A. Facts

Plaintiff is currently an inmate at the Gus Harrison Correctional Facility in Adrian, Michigan. (Dkt. 31, Not. Regarding Pl.'s Change of Address.) Plaintiff claims his constitutional rights were violated while incarcerated at a different facility–the Mound Road Correctional Facility ("NRF") in Detroit, Michigan. (Dkt. 1, Pl.'s Compl. at 1.) Plaintiff alleges that on January 9, 2009, he submitted a medical kite complaining about swelling and pain in his right leg. (Dkt. 1, Pl.'s Compl. at 3.) Notably, neither Plaintiff nor Defendants attached this kite to their pleadings and/or motions. However, the record reveals that Defendant Beasley, a registered nurse at the facility, received this kite. (Dkt. 18, Defs.' Mot. Summ. J., Ex. 2.) In her response to this kite, Beasley indicated Plaintiff was complaining of "allergies." (Dkt. 1, Pl.'s Compl. at ECF 11.) Beasley scheduled a sick visit for Plaintiff for January 21, 2009–12 days after Plaintiff's kite for treatment. (*Id.*) She noted that the "patient's perspective of urgency" was "urgent" while the "staff's perspective of urgency" was "routine." (*Id.*)[2]

Plaintiff claims he submitted another medical kite on January 12, 2009. (Dkt. 1, Pl.'s Compl.

---

[2] This discrepancy was not unique. For example, Plaintiff submitted another medical kite to receive gloves to exercise in because of bruising. The kite response indicates that from Plaintiff's perspective this was urgent, while from the staff's perspective this was routine. (Dkt. 22 at ECF 14.)

at 4.)  There is no record of this kite.

Plaintiff filed Grievance NRF 09010046-12D on January 15, 2009 complaining about the Health Care Unit's ("HCU") inaction with regard to his medical kite of January 9, 2009.[3]  (Dkt. 1, Pl.'s Compl., Ex. A.)  In that grievance, Plaintiff claims that HCU violated his Eighth Amendment rights by refusing to treat him.  (*Id*.)

On January 16, 2009  – one day after Plaintiff filed his grievance – HCU sent Plaintiff to Detroit Receiving Hospital's Emergency Room due to continued swelling and pain in this right leg. The ER doctors at Detroit Receiving diagnosed Plaintiff with a deep venous thrombosis[4] in his right leg.  (Dkt. 22-1 at ECF 40 of 50.)   Plaintiff was in the hospital for six days, and received IV Heparin and Coumadin.  (*Id*. at ECF 33-37 of 50.)

Thereafter, on January 29, 2009, Defendant Kristensen responded to Plaintiff's grievance indicating that Plaintiff did not mention "pain" in his original kite, and that Plaintiff's "[h]ealth care needs were met."  (Dkt. 1, Pl.'s Comp., Ex. A.)  Defendant Smith-Gladney reviewed and signed this response on January 29, 2009.  (*Id*.)

Plaintiff filed a Step II Appeal on February 19, 2009.  (*Id*. at Ex. B.)  At this time, Plaintiff claimed that his original kite complained about both pain in his leg and the possibility of an allergic reaction.  (*Id*.)  He also claimed that within the seven day delay between his January 9, 2009 kite and his January 16, 2009 emergency room visit, "the blood clot could have broke free and traveled

---

[3]  Notably, Plaintiff does not mention his alleged follow-up kite on January 12, 2009 in his grievance.

[4]  A deep venous thrombosis ("DVT") is the formation of a blood clot in "one or more deep veins, usually of [one of] the lower limb [s], characterized by swelling, warmth, and erythema; it is frequently a precursor of pulmonary embolism."  *Dorland's Illustrated Medical Dictionary, 31* at 1948-49.

through grievant's blood to major organs, there causing damage and even death." (*Id.*)

Defendant Alfred Jones responded to the Step II Appeal on February 27, 2009. (*Id.*) Jones indicated that he reviewed Plaintiff's electronic medical record, which indicated that Plaintiff's January 9, 2009 kite was regarding an "allergy." (*Id.*) Jones denied the Step II Appeal. (*Id.*)

Plaintiff filed a Step III Grievance on March 18, 2009. (*Id.*) Defendant Russell reviewed the Step III Grievance and issued a response on April 3, 2009. (*Id.*) Defendant Russell denied the grievance and indicated that Plaintiff's "medical needs were appropriately addressed." (*Id.*)

### B. Procedural History

Plaintiff brought this prisoner civil rights case *pro se* and *in forma pauperis* on June 24, 2010. (Dkt. 1, Pl.'s Compl. at 1.) Plaintiff seeks compensatory and punitive damages of $100,000.00, and an order declaring that "the Defendant(s) have acted in violation of the United States Constitution." (*Id.* at 5.) Defendants Beasley, Kristensen and Smith-Gladney filed a Motion for Summary Judgment on November 16, 2010. (Dkt. 18, Defs.' Mot. Summ. J.) Defendant Jones filed a Motion for Summary Judgment on June 29, 2011. (Dkt. 44, Def.'s Mot. Summ. J.)

## II. ANALYSIS

### A. Legal Standards

#### 1. Summary Judgment Pursuant to Rule 56

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the

light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

### 2. *Dismissal for Failure to State A Claim Pursuant to Rule 12(b)(6)*

Under Fed. R. Civ. P. 12(b)(6), a case warrants dismissal if it "[f]ails to state a claim upon which relief can be granted." When deciding a motion under Rule 12(b)(6), "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true," and determine whether the plaintiff has alleged "enough factual matter" to "state a claim to relief that is plausible on its face." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability," it has failed to show that relief is plausible as opposed to a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). In applying this rule to pro se plaintiffs, the Court is mindful that allegations in the complaint are held "to less stringent standards than formal

5

pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, 28 U.S.C. 1915(e)(2) "mandates that a complaint filed by a prisoner proceeding in forma pauperis be dismissed with prejudice if it is frivolous or fails to state a claim." *Hix v. Tenn. Dept. of Corrs.*, 196 F. App'x 350, 354 (6th Cir. 2006) ("When a district court determines that a complaint . . . fails to state a claim, the court lacks discretion under the PLRA to permit the plaintiff to file an amended complaint.").

### B.  Plaintiff's Claims Against Defendants Smith-Gladney, Kristensen, Jones and Russell Should be Dismissed with Prejudice

Plaintiff's allegations against Defendants Smith-Gladney, Kristensen, Jones, and Russell stem from their roles processing Plaintiff's grievance. (Dkt. 1, Pl.'s Compl., Exs. A-B.) Defendant Kristensen denied Plaintiff's Step I Grievance; Defendant Smith-Gladney reviewed this denial; Defendant Jones denied Plaintiff's Step II Appeal; Defendant Russell denied Plaintiff's Step III Appeal. (*Id.*)

A court may not impose liability under 42 U.S.C. § 1983 on a defendant simply because that defendant denied an administrative grievance or failed to act based upon information contained in the grievance. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "Claims that are based simply on the denial of a grievance do not state a claim of constitutional dimension." *Newson v. Steele*, No. 09-10346, 2010 U.S. Dist. LEXIS 58075 (E.D. Mich. Jan. 14, 2010) (citations omitted). Pursuant to this law, Plaintiff fails to state a claim against Defendants Smith-Gladney, Kristensen, Jones, and Russell. Accordingly, these Defendants should be dismissed with prejudice.

### C.  Plaintiff's Claims Against Defendant Beasley Should be Dismissed with Prejudice

Plaintiff claims that Defendant Beasley was deliberately indifferent to Plaintiff's medical need that he complained about in his kite on January 9, 2010, and that this constitutes a violation of

6

his Eighth Amendment rights.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. Amend. VIII. In the context of prisoners' medical needs, courts find a violation of the Eighth Amendment only where prison officials are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994); s*ee also Hudson v. McMillian,* 503 U.S. 1, 20 (1992) ("The Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind."); *Estelle v. Gamble*, 429 U.S. 97 (1976). An Eighth Amendment "deliberate indifference" claim consists of objective and subjective components.

The objective component requires a plaintiff to demonstrate "a 'sufficiently serious' medical need such that [the plaintiff] is 'incarcerated under conditions posing a substantial risk of serious harm.'" *Ford v. County of Grand Traverse,* 535 F.3d 483, 495 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir. 2004)). A medical need is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore,* 390 F.3d at 897.

The subjective component of a deliberate indifference claim requires the plaintiff to show that the defendant had "a sufficiently culpable state of mind in denying [the plaintiff] medical care." *Id.* at 895 (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). "[A] plaintiff must establish that 'the official knows of and disregards an excessive risk to inmate health or safety,' which is to say 'the official must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference.'" *Farmer,* 511 U.S. at 837.

Where a plaintiff's Eighth Amendment claim is based on an alleged delay in treatment, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County,* 238 F.3d 739, 742 (6th Cir. 2001) (quotation marks and citation omitted). As the Sixth Circuit subsequently clarified, however:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore,* 390 F.3d at 898 (citing *Napier,* 238 F.3d at 742).

### 1. Objective Element – Failure to Treat a Serious Medical Condition

Plaintiff alleges that Defendant Beasley failed to properly treat his serious medical condition. Defendant Beasley does not dispute that deep venuous thrombosis is a serious medical condition. (Dkt. 18, Defs.' Mot. Summ. J., Ex. 2.) *See also Dorland's Illustrated Medical Dictionary, 31* at 1948-49. Rather, Beasley submitted an affidavit that states: "On January 9, 2009, I processed a medical kite (note) submitted by Plaintiff on January 8, 2009. In the kite, Plaintiff complained about allergies, but expressed no claim of a life-threatening medical condition." (Dkt. 18, Defs.' Mot. Summ. J., Ex. 2.) This is consistent with the grievance responses as well. (*Id.*) Defendant Beasley also states, "Plaintiff presented no signs or symptoms of DVT in his January 8, 2009 kite." (*Id.*) Thus, it appears that Defendant Beasley never actually examined Plaintiff, but relied instead on Plaintiff's own description of his symptoms. (*Id.*) Plaintiff's description of his symptoms, while

8

more detailed, is not inconsistent with Defendant Beasley's description. Plaintiff claims that the kite indicated he was having an allergic reaction to something, and his calf was swollen and he was in pain. (Dkt. 1, Ex. A; Pl. Summ. J. Resp. at 5.)

Therefore, the primary issue in analyzing the "objective" element is whether Beasley's decision to delay even examining Plaintiff for 12 days constitutes a failure to properly treat a serious medical condition. This, in turn, requires an analysis of the two separate branches of Eighth Amendment decisions regarding delay in treatment. *Blackmore v. Kalamazoo*, 390 F.3d 890, 897-98 (6th Cir. 2004).

The first is the "obviousness" branch. *Id.* Under this approach, "[w]hen prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity." *Id.* at 899. *Blackmore* itself illustrates this point. There, the plaintiff vomited while being detained, and repeatedly "complained of 'sharp' and severe' stomach pains for an extended period of time." *Id.* As such, the Sixth Circuit reasoned that the plaintiff's "serious need for medical care . . . was 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Id.* (citation omitted).

The second branch of Eighth Amendment decisions involve "seemingly minor or non-obvious" afflictions. *Id.* at 898. These cases are assessed under the Sixth Circuit's decision in *Napier:* "[w]here the plaintiff's 'deliberate indifference' claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious, . . . medical proof is necessary to assess whether the delay caused a serious medical injury." 238 F.3d at 742.

9

Plaintiff claims he was in "unbearable pain" due to his DVT.  (Dkt. 1, Pl.'s Compl. at 4.)
He also claims that he complained to "his first and second shift officers about the chronic pain, and
showed them his leg to show that where was in fact swelling."  (*Id*.)  However, he has not produced
any other record evidence indicating that a layperson would easily recognize that he needed a
doctor's attention.  *Id*.  Regardless, given that the Court must read all facts in a light favorable to
Plaintiff on summary judgment, this Court will analyze Plaintiff's serious medical need under both
the "obviousness" standard and the "detrimental effect of delay standard."

> a.  *"Obviousness" standard*

In *Davis v. Wilkinson*, the Court analyzed whether "calf tenderness and swelling after an
ankle injury" were "such obvious symptoms of a DVT that even a lay person . . . . would perceive
the seriousness" of Plaintiff's medical need.  *Davis*, No. 2:04-CV-303, 2006 U.S. LEXIS Dist.
15021, *21 (S.D. Ohio, March 31, 2006).  The Court held that such symptoms were not obvious
signs of DVT, especially after an ankle injury that could produce the same symptoms.  *Id*. at 21-22.
In this case, Plaintiff had similar calf swelling as the Plaintiff in *Davis*.  While Plaintiff did not have
an ankle injury, he claimed to be having an allergic reaction to something – a common symptom of
which could be leg swelling.  Plaintiff indicates that he also complained several times about chronic
pain.  (Dkt. 1, Pl.'s Compl. at 4).  There is nothing in the record, however, that suggests the
combination of an allergic reaction with leg swelling and pain were such obvious symptoms of a
DVT that even a lay person would perceive the seriousness of Plaintiff's medical need.  As such,
the Court will  analyze Plaintiff's claim under the  *Napier* "detrimental effect of delay" standard.

> b.  *"Detrimental effect of delay" standard*

Under the *Napier* "detrimental effect of delay" standard, Plaintiff must "place verifying

10

medical evidence in the record to establish the detrimental effect of the" delay in treatment. *Napier*, 238 F.3d at 742. Although the Sixth Circuit has not explicitly defined the term "verifying medical evidence," it has addressed whether certain evidence proffered by prisoners constitute "verifying medical evidence." *Davis*, 2006 U.S. Dist. LEXIS, at *22-23. For example, in *Johnson v. Karnes*, 398 F.3d 868, 875-76 (6th Cir. 2005), the Sixth Circuit accepted an affidavit from a physician as verifying medical evidence. *Id.* at 874 (The affidavit stated: "[I]t is common medical knowledge, which should be known to every medical practitioner, that severed tendons must be repaired in a timely manner, because over the time the severed tendons will retract, and may become irreparable."); *see also Stewart v. City of Niles*, No. 4:04 CV 1852, 2005 U.S. Dist. LEXIS 29276, *27 (N.D. Ohio Nov. 23, 2005) (accepting the "uncontroverted affidavit" of a defense medical expert as verifying medical evidence).

In *Davis v. Wilkinson*, the Court did not accept a doctor's answers to Plaintiff's discovery requests as verifying medical evidence regarding DVT. *Davis*, 2006 U.S. Dist. at *26. The discovery requests and answers were as follows:

> REQUEST: Admit or deny – Delaying medical placement and treatment of Plaintiff for 22 days could possibly be the cause of Plaintiff developing a DVT in his left leg after he fractured it.
>
> ANSWER: Qualified admit, it is possible.
>
> REQUEST: Explain the cause of the DVT in Plaintiff's left leg.
>
> ANSWER: Decreased activity could be a cause. No certainty of cause.
>
> REQUEST: Admit or deny – It is impossible that the delay of 22 days of medical placement and treatment had anything to do with the Plaintiff developing a DVT in his left leg after he fractured his left ankle . . . .

ANSWER: It is not impossible, but highly unlikely.

*Id.*

In *Davis*, the plaintiff claimed that defendants delayed for 22 days to prescribe Coumadin to prevent the formation of a DVT after his ankle injury. *Id.* at *21. This case is slightly different. Plaintiff seems to be alleging that Defendant Beasley's failure to immediately examine him (and instead schedule an appointment for 12 days after his complaint) led to an exacerbation of his condition and an eventual visit to the emergency room. (Dkt. 1, Pl.'s Compl. at 3-4.) This distinction notwithstanding, Plaintiff presents even weaker evidence than that rejected in *Davis*. There is no verifying medical evidence that Defendant Beasley's failure to promptly examine Plaintiff led to the worsening of his condition and the developing of a DVT. (*Id.*) The only medical evidence Plaintiff presents is the "Final Report" from Harper Hospital. (*Id.* at Ex. C.) This report confirms that the emergency room doctor diagnosed Plaintiff with a DVT. (*Id.*) However, there is no verifying medical evidence or records that Defendant Beasley's delay in examining Plaintiff exacerbated and/or caused his DVT – which was eventually treated. Moreover, Plaintiff's discovery requests to Defendants, served on June 20, 2011, do not request any verifying medical evidence that would support his case. (Dkt. 46, Pl.'s Req. for Admission.) As such, there is no genuine issue of material fact with regard to the objective component of Plaintiff's Eighth Amendment claim, and the Court recommends dismissal of Plaintiff's cause of action against Defendant Beasley .

### 2. *Subjective Element – Culpable State of Mind*

Even if Plaintiff had raised a genuine issue of material fact as to the objective component of his Eighth Amendment claim, Beasley is still entitled to summary judgment on the subjective component of Plaintiff's claim.

To satisfy the subjective component, an inmate must show that a prison official had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. Indeed, as mentioned above, Plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [she] did in fact draw the inference, and that [she] then disregarded that risk." *Id*. at 837. This is a very high standard.

The facts, in a light most favorable to Plaintiff, are these: 1) Defendant Beasley was aware of a medical complaint by Plaintiff; 2) Defendant Beasley did not examine Plaintiff; 3) Defendant Beasley scheduled an appointment for Plaintiff 12 days after the initial complaint; 4) Plaintiff had pain and swelling in the leg. (Dkt. 18, Defs.' Mot. Summ. J. at Ex. 2.) There is no evidence, however, that Defendant Beasley inferred that her decision to schedule Plaintiff for a future appointment rather than immediately evaluate him would cause "substantial risk" to Plaintiff. To the contrary, the record supports Beasley's explanation that she believed Plaintiff was suffering from an allergy. She indicated in her response to Plaintiff's kite that she viewed the complaint as "routine." (Dkt. 1, Pl.'s Compl. at Ex. A, ECF 11.) Plaintiff has produced no evidence indicative that Beasley thought otherwise. Nor has Plaintiff requested any evidence indicative that Beasley thought otherwise. (Dkt. 46, Pl.'s Req. for Admission.)[5]

While others might have treated Plaintiff differently, that does not mean Beasley's conduct violated the Eighth Amendment. Again, in the context of medical care for prisoners, the Supreme

_____

[5] Plaintiff filed this case on June 24, 2010. (Dkt. 1, Pl.'s Compl.) Therefore, this case has been pending for more than a year. Defendants Kristensen, Smith-Gladney and Beasley filed their Motion for Summary Judgment on November 16, 2010 – over six months ago. (Dkt. 18, Defs.' Mot. Summ. J.) Plaintiff does not indicate in his Opposition to this Motion for Summary Judgment that he needed any additional discovery to adequately respond. In addition, the Court has reviewed Plaintiff's recent discovery requests and the information being sought would not alter the Court's findings. In short, Plaintiff has had sufficient time to procure discovery supporting his case and has failed to do so.

Court has long held that the standard for asserting an Eighth Amendment claim is deliberate indifference, not negligence:

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle,* 429 U.S. at 105-06. The Court finds that Defendant Beasley's response to Plaintiff's medical complaint – for which he was ultimately treated within a matter of days – does not rise to the level of a constitutional deprivation as a matter of law and thus recommends that Defendant Beasley's summary judgment motion be granted.

## III.  CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court **RECOMMENDS** that the Defendants' Motions for Summary Judgment be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED WITH PREJUDICE** as to Defendants Smith-Gladney, Kristensen, Jones, and Beasley. The Court also **RECOMMENDS** that Plaintiff's claims against Defendant Russell be **DISMISSED** with **PREJUDICE** for failure to state a claim upon which relief may be granted. Lastly, the Court orders that Defendants' Motion to Stay Discovery be **DISMISSED** as **MOOT**. (Dkt. 45, Defs.' Mot. to Stay.)

14

## IV. FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. A copy of any objections is to be served upon this magistrate judge. E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

> s/Laurie J. Michelson
> LAURIE J. MICHELSON
> UNITED STATES MAGISTRATE JUDGE

Dated: July 8, 2011

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 8, 2011.

> s/J. Johnson
> Deputy Clerk

15